**GUST ROSENFELD P.L.C.**
One East Washington Street, Suite 1600
Phoenix, Arizona 85004-2553
Tel: 602-257-7422
Fax: 602-254-4878
Craig A. McCarthy – 013128
Wendy N. Weigand – 019362

**Attorneys for Plaintiff**

# IN THE DISTRICT COURT

# STATE OF ARIZONA

| | |
|---|---|
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, a Wisconsin corporation,<br><br>Plaintiff,<br><br>v.<br><br>SCOTTSDALE CASITAS CONDOMINIUM ASSOCIATION; AAM L.L.C.; and R&R PROPERTY MANAGEMENT,<br><br>Defendants. | No.  2:16-cv-02289-GMS<br><br>**FIRST AMENDED COMPLAINT**<br>(Declaratory Relief) |

American Family Mutual Insurance Company ("American Family) for its complaint asserts and alleges as follows:

## JURISDICTION AND VENUE

1. American Family issued a policy of insurance under policy no. 02X7885401 (the "Primary Policy") to named insured Scottsdale Casitas Condominium Association ("Scottsdale Casitas").

2. AAM L.L.C. ("AAM") and R&R Property Management ("R&R") are listed as Additional Insureds under the Primary Policy.

3. The initial Primary Policy stated a policy period from 08/18/2010 to 08/18/2011.

4. The Primary Policy was renewed four times with effective dates through 8/18/2015.

. . .

5. American Family also issued an Umbrella Policy under policy no. 02X7885405 ("Umbrella Policy") that also covered Scottsdale Casitas, AAM, and R&R concurrently with the Primary Policy and was renewed for each policy period the Primary Policy was in place.

6. American Family also issued Business Key policy no. 02XB273601 to named insured R&R Property Management, LLC (the "R&R Policy").

7. The R&R Policy stated a policy period of 3/26/2012 to 3/26/2013.

8. American Family is a Wisconsin corporation authorized to do business in Arizona.

9. Scottsdale Casitas is an Arizona corporation whose address as registered with the Arizona Secretary of State is 1600 W. Broadway Rd, Ste 200, Tempe, Arizona 85282.

10. AAM, L.L.C. is an Arizona limited liability company whose address as registered with the Arizona Secretary of State is 1600. W Broadway Rd, Ste 200, Tempe, Arizona 85282.

11. R&R Property Management is an Arizona limited liability company whose address as registered with the Arizona Secretary of State is 1600 W. Broadway Rd, Ste 200, Tempe, Arizona 85282.

12. Angela C. Winius ("Winius") filed a lawsuit against Scottsdale Casitas, AAM, and R&R under Maricopa County Superior Court cause no. CV2015-004103 (the "Lawsuit").

13. Scottsdale Casitas sought coverage for defense of the Lawsuit and indemnification for the damages claimed by Winius, therein, against Scottsdale Casitas, AAM, and R&R.

14. Because American Family is a Wisconsin corporation, and because Scottsdale Casitas, AAM, and R&R are Arizona businesses, there is complete diversity,

and this Court has jurisdiction over this matter.

15.   Jurisdiction and venue are proper in this court.

**FACTS**

16.   The Lawsuit allegations include assertions that Scottsdale Casitas, AAM and R&R each failed to mitigate, remove and clean up pigeon excrement (described as "droppings") at the insured property which Winius alleges to have created a health and safety hazard, ultimately causing her to contract cryptococcal meningitis ("CM") due to exposure to the fungi known as cryptococcus neoformans which is found in bird excrement or soils contaminated by bird excrement:

> 20.   Defendants, and each of them, knew, understood, and were aware from June 2011 to August 2014 that there was a problem, and health and safety hazard, with pigeon droppings accumulating on and at the property and units of the Scottsdale Casitas, including in particular Plaintiffs Unit 102.
>
> 21.   The pigeon droppings accumulating on and at the property and units of the Scottsdale Casitas, including in particular Plaintiffs Unit 102, constitutes an unreasonably dangerous condition.
>
> 22.   Defendants, and each of them, owed to each owner, lessee, occupant, and other persons at the Scottsdale Casitas a duty to use reasonable care to remove and clean up the aforementioned pigeon droppings, and to prevent the reoccurrence and reaccumulation of pigeon droppings at the Scottsdale Casitas, including in particular Plaintiffs Unit 102.
>
> 24.   Defendants, and each of them, chose not to, and/or failed to, reasonably maintain, upkeep, ensure a sanitary condition at, and the safety of, the Scottsdale Casitas at the risk and expense of the health, welfare, and safety of the owners, lessees, occupants, and others of the Scottsdale Casitas.
>
> 25.   From approximately June of 2011 through approximately August 1, 2014, defendants, and each of them, chose not to, and/or failed to:
>
> > (a)   Install reasonable and sufficient anti-pigeon spikes or bird deterrence devices to prevent pigeon standing, nesting, occupation and the resulting pigeon defecation/droppings at, near, or above the doorways/entrances areas and elsewhere of the units at the Scottsdale Casitas, in particular at Plaintiffs Unit 102;

      (b)    Install reasonable and sufficient anti-pigeon or bird deterrence devices to prevent pigeon standing, nesting, occupation and the resulting pigeon droppings at, near, or above the roofing and post areas and elsewhere of the units at the Scottsdale Casitas, in particular at Plaintiffs Unit 102;

      (c)    Perform timely, consistent, regular, proper, reasonable, and sufficient pigeon dropping removal at the locations where inadequate anti-pigeon spikes were installed in an attempt to prevent the accumulation and build-up of pigeon droppings at the units at the Scottsdale Casitas, in particular at Plaintiffs Unit 102;

      (d)    Perform timely, consistent, regular, proper, reasonable and sufficient pigeon dropping removal on the grounds outside of the units of the Scottsdale Casitas, in particular at Plaintiffs Unit 102; and

      (e)    Perform timely, consistent, regular, proper, reasonable and sufficient washing and/or power washing or other clean-up techniques of the locations where pigeon droppings had accumulated or existed, or still existed, at the units at the Scottsdale Casitas, in particular at Plaintiffs Unit 102.

29. CM [Cryptococcal meningitis] is caused by exposure to one of two types of fungi: *cryptococcus neoformans or cryptococcus gattii.*

30. *Cryptococcus neoformam* is found in bird droppings and/or soil contaminated with bird droppings.

33. CM from the *cryptococcus neoformans* fungi can be acquired through inhaling dry, dusty aerosolized bird droppings and/or soil particles contaminated with bird droppings.

35. From June 2011 to August 2014, Plaintiff was exposed to pigeon droppings and the dry, dusty aerosolized pigeon droppings at the Scottsdale Casitas, including at her Unit 102.

37. Plaintiff was soon diagnosed with CM. The CM was caused by the *cryptococcus neoformans* fungi.

38. The source of the *cryptococcus neoformans* fungi was Plaintiffs exposure to pigeon droppings and the dry, dusty aerosolized pigeon droppings at the Scottsdale Casitas, including at her Unit 102.

39. As a direct result of the negligence and unreasonable actions, errors, and omissions of the defendants, and each of them, Plaintiff required extensive medical, surgical, and healthcare services and is expected to require additional reasonably probable future healthcare services in the foreseeable future.

17. The Winius claims, as set forth in the Lawsuit, were presented to American Family for coverage and defense of the Lawsuit. The occurrence giving rise to the Lawsuit is alleged to have occurred within the policy period.

18. In SECTION II – LIABILITY the Primary Policy provides:

    **A.**    **Coverages**

        **1.**    **Business Liability**

           **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" and "property damage" to which this insurance applies. . .

           **b.**    This insurance applies:

               **(1)**    To 'bodily injury' and 'property damage' only if:

                  **(a)**    The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'covered territory';

                  **(b)**    The 'bodily injury' or 'property damage' occurs during the policy period . . ."

19. The Primary Policy contains provisions under "Exclusions" as follows:

The following provisions are added to **Section II – Liability:**

    **A.**    The following exclusion is added to Paragraph **B.1., Exclusions – Applicable to Business Liability Coverage**:

        **t.**    **Fungi Or Bacteria**

           **(1)**    "Bodily injury", "property damage" or "personal and advertising injury" **which would not have occurred**, in whole or in part, **but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi"** or bacteria **on or within a building or structure**, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

>   **(2)**   Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.
>
> **B.**   The following definition is added to Paragraph **F. Liability And Medical Expenses Definitions:**
>
>   **1.**   **"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins**, spores, scents or by-products produced or **released by fungi**.

(Emphasis added).

20.   The Primary Policy contained this Exclusion for Pollution, as follows:

> **f.**   **Pollution**
>
>   **(1)**   "Bodily Injury" or "property damage" which would not have occurred in whole or part but for the **actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants"** at any time.

(Emphasis added).

21.   The Primary Policy further defines pollutants as follows:

> The following provisions are added to Section II – Liability:
>
> **F.**   **Liability And Medical Expenses Definitions**
>
>   **15.**   **"Pollutants"** mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and **waste**. Waste includes materials to be recycled, reconditioned or reclaimed.

22.   The Primary Policy contained an additional Exclusion for punitive damages, Endorsement BP 85 05 07 98 states:

> The following is added to Paragraph **B. Exclusions in Section II – Liability**:
>
> This insurance does not apply to:

2817918                                              6

**Punitive Damages**

Punitive or exemplary damages.

23. The Umbrella Policy contained similar coverage provisions:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.   Insuring Agreement**

    a.  We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such **"bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted.** When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. . . .However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

    At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit", for which we have the duty to defend. But:

    **(1)**  The amount we will pay for the "ultimate net loss" is limited as described in Section **III** – Limits Of Insurance; and

    **(2)**  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B**.

(Emphasis added).

24. The Umbrella Policy had a similar Exclusion as contained in the Policy:

    A.  The following exclusion is added to **Paragraph 2. Exclusions of Section I – Coverage A – Bodily Injury and Property Damage Liability:**

        **1.   Exclusions**

2817918                                         7

>      This insurance does not apply to:
>
>      **FUNGI OR BACTERIA**
>
>      a.   **"Bodily injury"** or "property damage" **which would not have occurred**, in whole or in part, but for actual, **alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence, of any "fungi"** or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.
>
>      b.   Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.
>
>      c.   The following definition is added to the **Definition Section:**
>
> 25.  The following definition is added to the **Definitions Section:**
>
>      **"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins,** spores, scants or byproducts produced or **released by fungi.**
>
> 26.  The Umbrella Policy also contains an Exclusion for pollution as follows:
>
>      i.   **Pollution**
>
>           **(1)**  "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time; . . .
>
>           **(2)**  "Pollution cost or expense."
>
> SECTION V – DEFINITIONS
>
> 15.  **"Pollutants" mean any solid**, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and **waste**. Waste includes materials to be recycled, reconditioned, or reclaimed.

(Emphasis added.)

27. The Umbrella Policy also provides an Exclusion for punitive damages as follow on Endorsement CU 71 01 10 01 as follows:

This insurance does not apply to punitive or exemplary damages awarded against any insured.

28. The R&R Policy contained similar coverage provisions as well:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.     Insuring Agreement**

   a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

   Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

(Emphasis added).

29. The R&R Policy contained Exclusions that included:

   **f.     Pollution**

   **(1)**  "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release

2817918                                 9

        or escape of "pollutants":

        a.    At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. . . .

SECTION V – DEFINITIONS

15.    **"Pollutants" mean any solid**, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and **waste**. Waste includes materials to be recycled, reconditioned, or reclaimed.

30.    The R&R Policy had an endorsement entitled FUNGI OR BACTERIA EXCLUSION:

    A.    The following exclusion is added to **Paragraph 2. Exclusions of Section I – Coverage A – Bodily Injury and Property Damage Liability:**

    **2.**    **Exclusions**

This insurance does not apply to:

**FUNGI OR BACTERIA**

    a.    **"Bodily injury"** or "property damage" **which would not have occurred**, in whole or in part, but for actual, **alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence, of any "fungi"** or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

    b.    Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

        This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

B.      The following definition is added to the **Definitions Section:**

> **"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins,** spores, scants or byproducts produced or **released by fungi.**

Damages claimed by the plaintiff in the Lawsuit include general damages for past medical, surgical, and healthcare services, as well as probable future medical services, special damages, punitive damages, and costs.  She also alleged lost enjoyment of life.

**COUNT ONE**
**Declaratory Relief**

31.     American Family issued the Primary Policy and the Umbrella Policy ("the Policies") to Scottsdale Casitas with coverage afforded to Scottsdale Casitas and its Additional Insureds, AAM and R&R, under certain terms and conditions.

32.     American Family issued the R&R Policy to R&R under certain terms and conditions.

33.     The Primary Policy, Umbrella Policy and R&R Policy are hereby referenced as "the Policies."

34.     The terms and conditions of the Policies excluded any bodily injury resulting from actual, alleged, or threatened inhalation or contact with any fungi on or in any insured building or structure, including the treatment of illness or bodily injury caused by said fungi.

35.     The terms and conditions of the Policies excluded any bodily injury resulting from actual, alleged, or threatened pollutants, including solid waste.

36.     The terms and conditions of the Policies excluded any punitive damages.

37.     On its face, the Lawsuit alleges that Winius was exposed to the *cryptococcus neoformans* **fungi**, which caused her cryptococcal meningitis.

38.     The Lawsuit alleges that Winius was exposed to the *cryptococcus neoformans* fungi found in bird droppings, a pollutant/waste, found on the property,

1  which Scottsdale Casitas, AAM and R&R negligently failed to mitigate or remove.

2    39. The Lawsuit also requests punitive damages.

3    40. The unambiguous terms of the Policies exclude all of the plaintiff's claims
4  for damages alleged in the Lawsuit.

5    41. Pursuant to A.R.S. § 12-1832, American Family seeks a declaration of its
6  rights and obligations under the Policies.

7    42. American Family is entitled to a determination stating that all claims for
8  damages set forth in the Lawsuit are excluded from coverage under the Policies.

9    WHEREFORE, American Family prays for relief in the form of the following:

10    a. A declaration stating that there is no coverage under the Policies for any
11     claims set forth in the Lawsuit;

12    b. A declaration stating that American Family is not obligated to provide a
13     defense or indemnity coverage under the Policies to Scottsdale Casitas,
14     AAM, or R&R for any claim set forth in the Lawsuit;

15    c. Attorneys' fees and costs incurred in this action; and

16    d. Any other relief the court deems just and proper.

17    Dated: November 28, 2016.

18             GUST ROSENFELD P.L.C.

19

20            By  */s/ Craig A. McCarthy*
           Craig A. McCarthy
21             Wendy N. Weigand
           *Attorneys for Plaintiff*

CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2016, I electronically transmitted the attached document to the Clerk's office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Lawrence A. Peshkin
PESHKIN & KOTALIK PC
3030 N. Central Avenue, Suite 1106
Phoenix, AZ  85012
lap@pklawyers.com
*Attorneys for Defendant AAM*

David J. Ouimette
DICKINSON WRIGHT PLLC
1850 N. Central Avenue #1400
Phoenix, AZ  85004
douimette@dickinsonwright.com
*Attorneys for Defendant R&R Property*

Lynn M. Krupnik
KRUPNIK & SPEAS
3411 N. 5th Avenue, Suite 216
Phoenix, AZ  85013
lynn@krupniklaw.com
*Attorneys for Defendant Scottsdale Casitas*

By /s/  *C.L. Scherff*